IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

James J. Larnerd, Jr.            :
     Plaintiff,                :      NO. 1:14-cv-01204
                                  :
    v.                            :
                                  :      (Conner, C.J.)
Detective Mong *et.al*,          :      (Saporito, M.J.)
                                  :
    Defendants.                   :

FILED
WILKES BARRE
AUG 1 0 2015

## REPORT AND RECOMMENDATION

*Pro se* Plaintiff, James J. Larnerd, Jr., brings this action pursuant to 42 U.S.C. §1983, alleging violations of his Fourth Amendment rights as a result of the alleged use of excessive force during his arrest on March 11, 2014. Pending before the court is a motion for summary judgment filed by Defendants, Detective Mong, Detective Walton, and Sergeant Hess (collectively "Defendants"), (Doc. 29), and Larnerd's motion requesting that the discovery deadline in this case be extended for a fourth time, (Doc. 43).

This matter has been referred to the undersigned Magistrate Judge for preparation of a report and recommended disposition pursuant to the provisions of 28 U.S.C. §636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. Based upon the court's review of the motions and related

materials, it is recommended that the Defendants' motion for summary judgment be **DENIED,** and Larnerd's motion for an extension fo time to complete discovery be **DENIED.**

## I.   FACTS AND PROCEDURAL HISTORY:

On June 23, 2014, Larnerd filed a *pro se* complaint pursuant to 42 U.S.C. §1983, alleging violations of his Fourth Amendment rights as a result of the alleged use of excessive force during his arrest on March 11, 2014. (Doc. 1).   Larnerd's complaint was dismissed on July 18, 2014. (Doc. 9).   Larnerd was, however granted leave to file an amended complaint, which he exercised on August 5, 2014. (Doc. 11). Defendants filed an Answer to Larnerd's amended complaint on October 6, 2014. (Doc. 16). On February 13, 2015, after engaging in discovery, Defendants filed the instant motion for summary judgment. (Doc. 29). Together with their motion, Defendants filed a statement of facts (Doc. 30) and a brief in support of their motion for summary judgment with exhibits (Doc. 31). In response, Larnerd filed a brief in opposition, with exhibits, (Doc. 32), and his own sworn declaration.   (Doc. 33).   Larnerd's brief in opposition consists of nine numbered paragraphs which appear to be somewhat

responsive to Defendants' statement of material facts.  On March 10, 2015, Defendants filed a reply brief in which they attack the sufficiency of Larnerd's response, and assert that the Defendants' statement of facts should be admitted due to Larnerd's noncompliance with Local Rule 56.1, and assert in the alternative that Larnerd admitted the essential facts thus entitling Defendants to the grant of summary judgment. (Doc. 34).

On May 4, 2015, Larnerd requested leave to amend his brief in opposition to Defendants' motion for summary judgment. (Docs. 37). The Court granted Larnerd leave to *supplement* his brief in opposition. (Doc. 38). On June 16, 2015, Larnerd filed an amended/supplemental brief in opposition to Defendants' motion for summary judgment.  (Doc. 40). Together with his amended/supplemental brief in opposition, Larnerd filed a second sworn declaration. (Doc. 41). On June 23, 2015, Defendants filed a reply to Larnerd's amended/supplemental brief in opposition, in which, similar to their first reply brief, they attack the sufficiency of Larnerd's response, and assert that the Defendants' statement of facts should be admitted due to Larnerd's noncompliance with Local Rule 56.1, and assert in the alternative that Larnerd admitted the essential facts thus entitling

Defendants to the grant of summary judgment. (Doc. 42).

Generally, when deciding a motion for summary judgment, the court relies on the facts enumerated in the parties' respective statement of material facts and counter-statement of material facts. However, as noted by Defendants, Larnerd's attempts to comply with the mandates of Local Rule 56.1 have fallen short. Local Rule 56.1 provides, in relevant part, that:

> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, *responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.*
>
> Statements of material facts in support of, or in opposition to, a motion *shall include references to the parts of the record that support the statements.*

LR 56.1 (*emphasis added*).

A party's failure to comply with Local Rule 56.1 permits the court to deem the proponent's statement of material facts undisputed, even when the opposing litigant is *pro se. See e.g., Kuhn v. Capitol Pavillion*, No. 1:11-cv-2017, 2012 WL 5197551, at *9 (M.D.Pa. Oct. 19. 2012); *Cf. Sanders v. Beard*, No. 3:03-cv-1384, 2010 WL 2853261 at *5 (M.D.Pa. Jul. 20,

2010)("While parties acting *pro se* are given leeway in certain requirements, they are not excused from complying with … the local rules of court."). The Defendants urge this court to deem admitted the facts as set out by Defendants in their statement of facts. (Doc. 30). However, this court has also found that to deem a statement of material facts admitted where there is a nonconforming response that clearly indicates and supports that there are disputed facts "would be inconsistent with the tradition of leniency given to pro se litigants in their compliance with procedural requirements." *Spencer v. Biggins,* No. 1-11-cv-01850, 2013 WL 5702312, at *2 (M.D.Pa. Oct. 18, 2013); *see also* Fed.R.Civ.P. 56(c) ("The court need consider only the cited materials, but it may consider other materials in the record."). The fact remains that, in this case Larnerd did respond to Defendants' motion for summary judgment, albeit not in perfect conformance with Local Rule 56.1, with two briefs in opposition to which he appended several exhibits to support his opposition. (Doc. 32; Doc. 40). Moreover, in his opposition Larnerd clearly disputes several material facts. As such, we do not deem Defendants' statement of material facts admitted in its entirety. However, those

material facts which Larnerd has failed to respond to and support in his opposition are deemed admitted.

The facts of record are as follows. On March 11, 2014, Defendants Hess and Walton were provided with information that a suspect – later identified as Larnerd – was about to participate in a drug transaction. (Doc. 30 ¶3; Doc. 32 ¶3). Defendants Hess and Walton reported that they had information that Larnerd may be in possession of a firearm. (Doc. 30 ¶4; Doc. 32 ¶3; Doc. 40 ¶7). Acting on this information, Defendant Hess approached Larnerd from behind. (Doc. 30 ¶5; Doc. 40 ¶6).[1] Larnerd was ordered to "get on the ground." (Doc. 30 ¶5; Doc. 40 ¶¶6, 7). Larnerd was standing with his hands above his head when Defendant Hess approached, despite Defendant Hess' order.[2]  (Doc. 30 ¶6; Doc. 16-1).

---

[1] Larnerd objected to paragraphs 5, 6, 7, and 8 of Defendants' statement of material facts in his first brief in opposition. (Doc. 32 ¶4). The sole basis for his objections was that this information was not included in Defendants' criminal discovery. We construe this an objection to these statements as being unsupported. Our review of the evidence underlying Defendants' statements in ¶¶5, 6, 7, and 8 revealed that Defendants properly supported these facts by citation to relevant evidence in the record. Thus, we do not accept the objection to these facts contained in Doc. 32 ¶4.

[2] Defendants' statement of fact does not address whether Larnerd was standing with his hand raised above his head when Defendant Hess

There is some dispute whether Defendant Hess announced that he was a police officer before ordering Larnerd to the ground. (Doc. 30 ¶5; Doc. 40 ¶6). At some point thereafter, Defendants Hess and Walters assisted Larnerd to the ground. (Doc. 30 ¶7; Doc. 40 ¶9). Larnerd was placed under arrest on March 11, 2014. Ultimately, Larnerd was convicted of two felony counts of possession with intent to manufacture or deliver, one felony count of criminal attempt to possess, manufacture or deliver, two misdemeanor counts of intent to possess a controlled substance, and one misdemeanor count of possession of drug paraphernalia. (Doc. 30 ¶2; Doc. 32 ¶3). As of the date Defendants filed their motion for summary judgment, Larnerd was awaiting sentencing. (Doc. 31 p. 3). As a result of the events that transpired during the short period between Defendant Hess' request that Larnerd "get on the ground" and Defendants' use of force to assist Larnerd to the ground and handcuff him, Larnerd filed the instant action against Defendants Hess, Walters and Mong. Larnerd's amended complaint alleges that the named Defendants, acting in combination, effectuated his arrest, and applied an objectively

---

approached. Instead, they simply assert that Larnerd did not get on the ground as ordered.

7

unreasonable amount of force when doing so. (Doc. 11).

Defendants do not dispute that Defendants Hess and Walton were involved in Larnerd's arrest. However, relying on Defendant Hess' police report, they assert that Defendant Mong was not involved in the arrest. Larnerd disputes this assertion, and contends that Defendant Mong was the only officer to testify at his trial, (Doc. 40 ¶5), and exhibited court records which list Defendant Mong as the arresting officer. (Doc. 32 p. 18).

Defendants assert that, after Defendant Hess approached Larnerd, he quickly restrained Larnerd's arms, and that Larnerd then attempted to pull away from his grasp. (Doc. 30 ¶6). Because Larnerd failed to follow the command to "get on the ground," Defendants Hess and Walters assisted Larnerd to the ground. (Doc. 30 ¶¶ 6, 7; Doc. 16-1). However, Larnerd contends that no officer attempted to restrain his arms at any point during the arrest. (Doc. 40 ¶6; Doc. 41). Larnerd asserts that he was standing with both arms above his head to show the officers his intent to cooperate when he was picked up and slammed to the ground by the Defendants. (Doc. 40 ¶6). Once on the ground, Larnerd alleges that he

was pinned in place by an officer who rested his knee against Larnerd's neck, his right arm was placed in handcuffs, and then his left arm was yanked and he heard a series of three "pops" before it too was placed in handcuffs. (Doc. 40 ¶9; Doc. 41).

While at central booking, Larnerd complained of pain in his left wrist. (Doc. 30 ¶8; Doc. 40 ¶10). He was transported to Good Samaritan Hospital where he refused treatment because his pain had subsided. (Doc. 30 ¶9; Doc. 40 ¶11). In their statement of material facts, the Defendants identify two diagnostic imaging studies, performed on April 11, 2014, and June 27, 2014. In addition to the two studies cited by Defendants, Larnerd has submitted evidence from a nerve conduction study. The results of these studies are as follows:

On April 11, 2014 – one month after his arrest – Larnerd's left shoulder was x-rayed due to his continuing complaints of pain. (Doc. 30 ¶10; Doc. 30-2; Doc. 40 ¶12). The x-ray revealed: adequate internal and external rotation; no acute fracture dislocation; no with Hill-Sachs deformity; moderate glenohumeral osteoarthritis with joint space narrowing, articular surface eburnation and osteophytes present; no

increased sclerosis at the humeral head to suggest avascular necrosis; and normal left hemithorax. (Doc. 30-2).

On June 4, 2014, Larnerd underwent a nerve conduction study. The study yielded abnormal results in Larnerd's left upper extremity compatible with a left C6 radiculopathy with acute/chronic denervation. (Doc. 32 pp. 16-17).

On June 27, 2014, Larnerd underwent an MRI of his cervical spine, though the sagittal and axial images were degraded by patient motion. The MRI revealed multilevel degenerative disc disease/osteoarthritis that was most pronounced at C6-C7 and less pronounced at C5-C6, C4-C5, and C4-C3, and multilevel foraminal narrowing the full extent of which could not be assessed due to the degraded images. (Doc. 30-3).

## II.   LEGAL STANDARD:

Rule 56(a) of the Federal Rules of Civil procedure provides that:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed.R.Civ.P. 56(a).   Summary judgment is proper only where the pleadings, depositions, answered to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.   Fed.R.Civ.P. 56(c).  For purposes of Rule 56, a fact is material if proof of its existence or nonexistence might "affect the outcome of the suit under the governing law".  *Haybarger v. Laurence Cnty. Audit Prob. & Parole*, 667 F.3d 408, 412 (3d Cir. 2012)(*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial.  *Id.* (*quoting Anderson, 477 U.S. at 248-49).*

To support a motion for summary judgment, the movant must demonstrate that, if the evidence were reduced to admissible evidence in court, it would be insufficient to allow the non-moving party to carry its burden of proof.  *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has satisfied this burden, "its opponent must do more than simply show there is some metaphysical doubt as to the material

facts." *Scott v. Harris,* 550 U.S. 372, 380 (2007). Instead, if the movant has carried its burden, the non-moving party must show a genuine issue for trial, and may not rely upon the allegations or denials in the pleadings. *Martin v. Godwin,* 499 F.3d 290, 295 (3d Cir. 2007); *See also* Fed. R. Civ. P. 56(c).

In adjudicating a motion for summary judgment, the court must view the evidence presented in the light most favorable to the opposing party, *Anderson,* 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party, *Big Apple BMW, Inc. V. BMW North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the evidence presented by the movant, then the non-movant's evidence must be taken as true. *Id.* Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the non-movant on the evidence presented. *Anderson,* 477 U.S. at 252; *see also Big Apple BMW,* 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact ... the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the provenance of that factfinder to ascertain the believability and weight of the evidence.

*Big Apple BMW*, 974 F.2d at 1363. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Marsushuta Elec. Indus. Co,, Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also N.A.A.C.P. v. North Hudson Regional Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011).

III. DISCUSSION:

Section 1983 of Title 42 of the United States Code provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any person of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. §1983. Although it is a vehicle for enforcing violations of federal rights either conferred by the United States Constitution or federal

statute, it is not itself a source of any substantive rights. *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Kneipp v. Teddler*, 95 F.3d 1199, 1204 (3d Cir. 1996).   In order to prevail in an action under section 1983, Larnerd must demonstrate: (1) he suffered a violation of a right secured to him by the Constitution or the laws of the United States; and (2) that the alleged violation was committed by a person acting under the color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000).

In addition to showing a violation of a federal right committed by a person acting under color of state law, Larnerd must prove that each defendant was personally involved in the alleged wrongdoing. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or actual knowledge and acquiescence." *Id.* "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id.*

In the instant matter, Larnerd alleges that his Fourth Amendment rights under the United States Constitution were violated when the defendant police officers used excessive force during his arrest.

Defendants contend that Larnerd has failed to establish the existence of an essential element of his excessive force claim and, thus, he cannot prove that he suffered a violation of a right secured to him under the Fourth Amendment. (Doc. 31 pp. 5-7). They also assert, in the alternative, that Defendants are protected by qualified immunity, (Doc. 31 pp. 7-9), and that Larnerd has not developed any facts related to the personal involvement of Defendant Mong. (Doc. 31 pp. 9).

A.   There is a Genuine Issue of Material Fact as to Whether Larnerd's Fourth Amendment Rights were Violated

Claims against police officers alleging that excessive force was used during an arrest are analyzed under the Fourth Amendment's objective reasonableness test. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Sharrar v. Felsing*, 128 F.3d 810, 820-21 (3d Cir. 1997). The Supreme Court has identified three factors to guide the court's analysis of whether an officer's actions were objectively reasonable: (1) the severity of the crime at issue; (2) whether the suspect poses an imminent threat to the safety of the police officers or others in the vicinity; and (3) whether the suspect attempts to resist arrest or flee the scene. *Graham*, 490 U.S. at 396. The Third Circuit has identified several additional relevant factors,

15

including, "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effectuating an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar*, 128 F.3d at 822. Furthermore, "the fact that the physical force applied [during an arrest] was of such an extent as to lead to injury is indeed a relevant factor to be considered as part of the totality," the absence of physical injury does not necessarily signify that the force used was not excessive. *Id.*; see also *Velius v. Twp. of Hamilton*, 466 Fed. App'x 133, 137 (3d Cir. 2012); *Spencer v. Biggins*, No. 1:11-CV-1850, 2013 WL 5702312, at *6 (M.D.Pa. Oct. 18, 2013). "The calculus of reasonableness must embody allowance for the fact that the police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

The court finds that there exists a genuine issue of material fact as to whether excessive force was used when Larnerd was apprehended.

Viewing the facts in light of the most favorable to Larnerd, and applying the *Graham and Sharrer* factors to the alleged excessive force that occurred, *i.e.*, the force Defendants used by throwing Larnerd to the ground, placing a knee on his neck, and violently wrenching Larnerd's left arm while handcuffing him, a reasonable fact finder could find that these actions constituted unreasonable force. The crimes for which Larnerd was convicted, three felony drug crimes and three misdemeanor drug crimes, are serious but nonviolent offenses. Larnerd was not displaying a weapon, and was in fact unarmed despite Defendants belief that he was *possibly* in possession of a firearm, and had both hands raised above his head when Defendant Hess approached. Taking Larnerd's sworn declaration as true, he did not attempt to resist or flee the scene at any point during the arrest. Larnerd's declaration reveals that he experienced left wrist pain on the night of the incident which quickly resolved but later developed into severe left shoulder pain that radiated down his left arm. An EMG revealed the impression of left-upper extremity radiculopathy, and these findings were consistent with the degenerative changes to C6-C7 on a subsequent MRI. Although Larnerd contends that his pain originated on

the night of his arrest, and was due to Defendants' use of force, he has

otherwise failed to offer any evidence from a medical source to bolster this

declaration.   We find that these actions may constitute excessive force

because the court cannot discern any proper reason for an unresisting

suspect to be thrown to the ground, knelt upon, and violently handcuffed.

Although the sole support for these assertions is Larnerd's self-serving

declaration, it may be sufficient for a rational fact-finder to credit

Larnerd's testimony and determine that excessive force was in fact used.

Therefore, the court finds that there is a genuine issue of material fact as

to whether Larnerd attempted to resist arrest or flee during this

apprehension, whether Defendants' actions actually caused the injuries

alleged by Larnerd, and whether Defendants' actions constituted excessive

force.

B.   THE ISSUE OF WHETHER THE DEFENDANTS ARE ENTITLED TO
      QUALIFIED IMMUNITY CANNOT BE DECIDED UNTIL CERTAIN
      FACTUAL ISSUES ARE RESOLVED

The doctrine of qualified immunity shields government officials

"from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable

person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Determinations regarding qualified immunity, and its application in a

given case, require a court to undertake two distinct inquiries. Courts

may exercise discretion in deciding which of the two prongs of the

qualified immunity analysis should be addressed first in consideration of

the circumstances presented by the particular case at hand. *Pearson v.

Callahan,* 555 U.S. 223 (2009). First, the court must evaluate whether the

defendant or defendants violated a constitutional right. *Saucier v. Katz,*

533 U.S. 194, 201-02 (2001), *abrogated in part by Pearson v. Callahan,*

555 U.S. 223 (2009); *Curly v. Klem,* 499 F.3d 199, 206 (3d Cir. 2007);

*Williams v. Bitner,* 455 F.3d 186, 190 (3d Cir. 2006). If the defendant did

not actually commit a constitutional violation, then the court must find in

the defendant's favor. *Saucier,* 533 U.S. at 201. If the defendant is found

to have committed a constitutional violation, the court must undertake a

second, related inquiry to assess whether the constitutional right in

question was "clearly established" at the time the defendant acted.

*Pearson,* 555 U.S. at 232; *Saucier,* 533 U.S. at 201-02. The Supreme

Court has instructed that a right is clearly established for the purposes of

qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right. *Williams*, 455 F.3d at 191 (*citing Saucier*, 533 U.S. at 202). The court is not required to conduct these two inquiries sequentially, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. *Pearson*, 555 U.S. at 239-40

Defendants assert that, even if there was a dispute of fact as to whether Larnerd's Fourth Amendment rights were violated by Defendants, this right was not clearly established – i.e., no reasonable actor under the circumstances would understand that the conduct of the Defendants in apprehending Larnerd violated Larnerd's Fourth Amendment rights. (Doc. 31 p. 9). Defendants assert that no reasonable actor under the circumstances would have known that it was unlawful to use the force alleged to subdue a resisting or fleeing suspect. *Id.* Although qualified immunity is a question of law and "should be resolved at the earliest possible stage of litigation," *Anderson v. Creighton*, 483 U.S. 635 (1987), when qualified immunity depends on disputed issues of

20

fact, those issues must be determined by the jury. *See Curly v. Klem*, 298 F.3d 271, 278 (3d Cir, 2002)("[j]ust as the granting of summary judgment is inappropriate when a genuine issue as to any material fact exists, a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis."). In this case, we find that outstanding disputes of material fact prevent the court from making the qualified immunity determination at summary judgment. This is not to say that Defendants are not entitled to qualified immunity, rather, the court merely concludes that the determination of whether Defendants are entitled to qualified immunity cannot be made until the outstanding questions of fact are resolved.

C.   THERE IS A GENUINE ISSUE OF MATERIAL FACT ON THE ISSUE OF THE NATURE AND EXTENT OF DEFENDANT MONG'S INVOLVEMENT IN LARNERD'S ARREST

Last, Defendants assert that Defendant Mong is entitled to summary judgment due to a lack of evidence of his personal involvement in Larnerd's arrest. (Doc. 31 p. 9). In response, Larnerd proffers court documents which list Defendant Mong as Larnerd's "arresting officer." (Doc. 32 p. 18). As such, we find there is a material dispute as to whether

21

Defendant Mong was among the officers who effectuated Larnerd's arrest.

D.   LARNERD HAS FAILED TO DEMONSTRATE ANY EXIGENT CIRCUMSTANCES WARRANTING A FOURTH EXTENSION OF THE DISCOVERY DEADLINE IN THIS CASE.

Discovery in this case was originally scheduled to close on December 15, 2014. (Doc. 17). On November 21, 2014, Larnerd filed his first request to extend discovery in this case.  (Doc. 18).  Larnerd's request was granted, and discovery was extended to February 16, 2015. (Doc. 19). On January 22, 2015, Larnerd filed his second request to extend discovery. (Doc. 26).  Larnerd's request was granted, and discovery was extended to May 16, 2015. (Doc. 28). While discovery was still ongoing, Defendants moved for summary judgment on February 13, 2015.  (Doc. 29).  After filing a response to Defendants' motion for summary judgment, Larnerd filed a third request to extend discovery. (Doc. 36).  Larnerd's request was, once again, granted, and the discovery deadline was extended to July 17, 2015.  (Doc. 39).  In granting his third request to extend discovery, Larnerd was cautioned that, absent a demonstration of exigent circumstances, no further extension of these deadlines would be granted. *Id.*  Before the expiration of the thrice-extended discovery deadline,

Larnerd composed a second response in opposition to Defendants' motion for summary judgment. (Doc. 40). One month later, Larnerd filed a fourth request to extend the discovery deadline. (Doc. 43).

To the extent that Larnerd has filed this request to permit additional discovery in order to supplement his opposition to Defendants' motion for summary judgment, nothing in his motion persuades us to entertain his request. *See* Fed.R.Civ.P. 56(d) (permitting a litigant who cannot present facts essential to justify its opposition to a motion for summary judgment to request that the district court permit additional discovery). Larnerd has already filed two briefs in opposition to Defendants' motion, and has failed to explain how, if uncovered, any additional evidence would preclude summary judgment. Moreover, Larnerd's existing briefs, without additional discovery, present sufficient evidence to successfully oppose Defendants' motion. We also note that, in his most recent motion Larnerd does not request any extension of the dispositive motion deadline, which expired on July 30, 2015, and has not expressed any intention of filing a cross-motion for summary judgment. (Doc. 43).

23

Accordingly, because Larnerd has already been liberally granted additional time to complete discovery,  has failed to identify any exigent circumstance preventing him from completing discovery in a timely manner, and has failed to identify any benefit that would result from this additional discovery, we recommend that his request be denied.

IV.   RECOMMENDATION:

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that:

(1)   Defendants' Motion for Summary Judgment (Doc. 29) be DENIED.

(2)   Larnerd's Motion for Extension of Time to Complete Discovery (Doc. 43) be DENIED.

JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: August 10, 2015

24

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| James J. Larnerd, Jr. | : | |
| Plaintiff, | : | NO. 1:14-cv-01204 |
| | : | |
| v. | : | |
| | : | (Conner, C.J.) |
| Detective Mong *et.al*, | : | (Saporito, M.J.) |
| | : | |
| Defendants. | : | |

## NOTICE

Notice is hereby given that the undersigned has entered the foregoing Report and Recommendation dated August 10, 2015. Any party may obtain a review of this Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in

Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and

Recommendation may constitute a waiver of any appellate rights.

JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: August 10, 2015